Case No. 22-3054, Haller v. U.S. Department of Health and Human Services Good afternoon, your honors. May it please the court, my name is Nick Wilder of the Wilder Law Firm. I am representing Dr. Haller and his associates. They are a surgical practice in Great Neck. And we are challenging the No Surprises Act, which is, I won't go through all of it because I'm sure you've read it. These kinds of legislation is not very fun to read. But essentially, the No Surprises Act was enacted purportedly to eliminate any, quote unquote, surprise bills to patients who had gone into, for example, the emergency room and were expecting their insurance company to pay for their medical treatment and they were out of network and they did not, the insurance did not cover, either did not cover all of what was expected in terms of costs or none. After which they would get a bill from the doctor, which was a surprise because they expected to be covered. And it also provides for a, what's known as the IDR, which is the Independent Resolution Board, for, as a means of shifting any issue, bringing the patients out of the question and bringing the doctors and the insurance companies together for an arbitration during, in which each side gives a number and the arbitrators simply decide which one of those numbers they'll go with. Is that IDR process mandatory or voluntary? It is essentially, it is mandatory and the defendant appellants have agreed that it is mandatory. The language essentially in the- Let me back up. The amicus brief of the, I guess the brain surgeons and associations, says that there's not a Seventh Amendment problem because this is a voluntary, it's a permissive process and it points to the use of may in various places and if it's not compulsory then it doesn't, it doesn't preempt the common law rights, whatever they may have been. It does by virtue of the fact that if any, either of the parties choose, so they may, either party may choose that process and if they choose that process to go through the arbitration, the other party is bound to go along with it. So your clients will, as a practical matter, always be stuck with the process because- The quote from the appellee's brief, they use the word mandatory. Right, but again, the appellee- I'm not saying that appellate's appellees. Undisputed that you two agree that it's mandatory. Can you just, to follow up on that, can you tell me what it is about the statute that leads you to believe that if one side says, hey, can we do the 30 day negotiation, and the other side says, no thanks, I'd like to sue you, that the other side is required to engage. I'm wondering where, if that's just the implication of the statute, sort of otherwise what would the point be? Yes. Otherwise the statute doesn't really have any effect, so that must be the purpose. Correct. There's no language in there that says this is a voluntary alternative for the parties to come together. It says if one party elects to- I wish I had the language in front of me, but the process is initiated when one party chooses to do so. From that point on, the other party has to respond, go through the 30 day negotiation, and so forth. Now, getting to, quickly to some of the problems, the first consideration which must be considered by the arbitration board is the QPA, which is the Qualified Payment Amount, which is entirely determined by the insurance companies. And it is determined on very sketchy, questionable grounds that are often not disclosed. They're based on, quote, ghost rates, which they don't reveal. A combination of different kinds of procedures are averaged, and this is a number that they give. But I would like to get to the central point of my appeal, of our appeal, is that the doctors being forced to go to arbitration is a violation of the 7th Amendment, because, of course, that violates the 7th Amendment right to bring a case before an Article 3 forum and under a jury trial. And the court- That depends on whether there was a pre-existing common law right. Right, exactly. And there is. Something the district court- That's correct. And the court correctly stated that. The cases all state that. And the court erred in not recognizing there is an abundance of common law. How did the court err when your client conceded-I understand it was different counsel, it's my issue- but conceded that there was no common law right? So then the court said, thank you, and put that aside and focused on the right to stay patient. So prior counsel was prior counsel. The number one answer to that is that the court spent six pages devoted. The other side has said, we forfeited, we forfeited, we forfeited, because this is not in what was discussed below by prior counsel. But the court itself spent six pages discussing, and I would underscore A, the joint appeal-the joint appendix page 56 to 61. The court spent six pages discussing this issue of arbitration versus whether- But because of a common law right to sue patients, right? That's 56 to 61. Both of them. Both issues are presented. Although the court did not discuss the common law right to sue patients almost at all. But I did include innumerable cases in which doctors prior to the NSA sued patients successfully. And there are also innumerable cases in which the doctors sued insurance companies successfully. So the court- Are you pursuing the claim that the aspect of this argument that is hinged on whether there was a common law right to sue patients? So the way I was reading this was, below you focused solely on a common law right to sue patients, and conceded a lack of a common law right to sue insurers. And now we've reversed that, that you're no longer perceiving- Yeah, I understand your question. Under Yee versus Escondido and a plethora of other cases, these are United States Supreme Court cases. The arguments can change as long as you're- No, but just help me make sure-am I right about what the arguments are? Before we-I understand that we- Yeah, yes, correct. So as long as your claim is the same. For example, a Seventh Amendment violation. You can change the argument. And this is repeated over and over and over and over again. And what we've changed-we have the same argument, a Seventh Amendment violation. Or the same claim, a Seventh Amendment violation. But we've shifted to a better argument that-which was addressed extensively by this court-I mean, by the court below, and for six pages, that the denial that doctors have a strong body of common law allowing them to sue insurance companies, including in federal court in New York. There are several cases that permit this, especially under unjust enrichment, if they've not been paid. There's a number of those cases. Do any of those indicate a right- I'm sorry? A common law right as to a jury trial? I mean, you framed it as a denial of your Seventh Amendment jury trial rights. Yes. There are cases you cite that-relating to the common law right to sue insurers- Correct. That involve jury trials. Yes, there are about seven or eight cases, a number of them federal cases in New York, which have allowed that. So there is a common law right already. That being the case, the court cannot-the lower court and any-and the law cannot extricate those common law cases and take them and put them into an Article I newfangled arbitration process, number one. And secondly, or also in addition, the case law, which at times says in New York that you cannot make new- you generally prefer not to have new arguments, say, however, when there are no new facts, but only matters of law in the new argument. No new facts, no new need for fact development, but only matters of law. And where to not address it would be to leave statutory law unaddressed, which needs to be addressed, which is pivotal to the decision and would lead to bad decisions. Before you run out of-well, I guess your time is up, but I have a question about your takings claim. What-well, you filed suit before the act became effective. Isn't that right? Correct. So how could-what was the taking and how could it have been a taking before the statute was effective? Because the language is so clear that-and it's proven over the past two years to have manifested itself that this is going to effectively demolish many doctors' practices as- what has happened is that the insurance companies, now that they have this arbitration- Is the thing that you are alleged has been taken- At the time- Common law legal claims, or is it dollars? It's dollars is what it amounts to. It's amounted to that as a result of- And how do you articulate that injury? What are you talking about? As a result of the NSA, the insurance companies are not willing to negotiate anymore in-network payment to doctors. And the doctors-there's been a widespread attrition of doctors practicing, which has harmed the public. And there would also need to be more time for it to develop. The record hasn't been developed. This is a motion to dismiss. The claim was made. Can I just-I'm sorry. Can I just-you're saying that the record hasn't been developed. I mean, that is a problem. You're asserting an injury, but there's no support for that injury in your filings. You're saying, well, so many things are going to happen in the future. What I would suggest is if you have a home which has been determined is going to be demolished, and they are telling you they'll pay you whatever they want, you essentially already have an injury, even though the home hasn't been demolished. Right, but that's not-that's different. That's very specific, because if someone says we're going to demolish your home, okay. This is what you're describing in terms of the effects of this law. It seems very speculative. It's like, well, we think it's going to drive doctors out of business, and we think this is going to happen, and it's not going to really help the general public. Well, we see from the language of the statute that there is a presumption that the insurance company's QPA is correct, and under similar language, there's no question that it was going to have a deleterious effect on doctors, and I think the purpose was to really was to take-for that to happen, for more money to be-for doctors to share an excessive amount of the money they make, which ends up bringing them out of business, and if the courts are willing, I would like to leave that argument for my brief and just go back to that prior argument, if that's okay. Well, here. Why don't you wrap up? Okay, I will. You have a few minutes for rebuttal. Okay, thank you. The law is very clear that when you have all of the cases that were cited by the court, and again, this is not-their argument that this is forfeited doesn't work, because the court itself spent six pages talking about this, this being the doctors being able to sue insurance companies. Northern Pipeline, Grand Financiero, Stern v. Marshall, Murray's Lessee, all of these cases and others that are cited in their cases and the court case, in the decision-the lower court case, they all mandated that common law cases cannot be taken into Article I fora. For an Article I fora to be used to deposit a right, it has to be a new public right created by Congress. When you have a standard common law case, contract, tortious interference, that cannot be simply put into-taken by the Article I and put into a case-a forum for adjudication other than the Article III and Seventh Amendment in a traditional court. And there's some discussion about, well, it's efficient, it's efficient, and so forth to use that for the arbitration. Efficiency is not the standard. The Constitution-constitutional rights cannot be abrogated based on the notion that it may be more efficient. And I would like to add one more point, that the idea that, well, there's also language, for example, that you can-excuse me- is that this exception, the public rights is an exception to Article III. It's not sort of the rule, it's an exception. That exception can happen when the-what the forum is derived from legislation, meaning it's a whole new right, where it's deemed essential-it's deemed essential to have this kind of specialized court with experts. And I would suggest, and the cases all suggest, this would totally eviscerate Article III. Look at a medical malpractice case and how complicated that is. That's a lot more complicated- Mr. Wilder, I think we have your argument. You've reserved a few minutes for rebuttal. Okay. Thank you. Thank you. May it please the court, Sarah Clark for the United States. I want to start with plaintiff's argument, what I take to be plaintiff's argument against their forfeiture. So obviously in district court, plaintiffs expressly disclaimed any common law claims against insurers. So that's at JA 174 and 175. They're colloquy with the judge. And they say now that essentially they haven't forfeited because the district court addressed it. But that's not right, right? The district court took as its premise, as one of its premises, plaintiff's concession, and then went on to examine the case based on the premises that it was litigated below, which is that the Seventh Amendment claim was based on plaintiff's asserted common law claims against patients. So the fact that the court went on to address the sort of Seventh Amendment doctrine and sort of didn't sort of carve out the insurer point, it doesn't mean that they addressed whether there are common law claims against insurers, and it doesn't detract from plaintiff's concession below. And it's no argument for- It arguably raises a different problem, though, which is that the district court's analysis was resting on something that was conceded that may or may not be correct as a matter of law. And are you asking us to affirm on that basis just because it was a forfeited argument? So I take your honor- There may be a serious Seventh Amendment argument here, and to affirm on the basis of a concession that may have been a mistake seems problematic to me. No, your honor, it's not problematic, because the question is whether plaintiffs have stated a claim here. So this is not an issue, even of statutory interpretation, where we're asking the court to go with one reading because plaintiffs didn't make a certain argument. They framed their entire Seventh Amendment challenge, which of course is about common law claims, based on the idea that they have claims against patients. So there's no problem with affirming the district court's conclusion that- But the district court's entire public rights analysis rests on the absence of a common law right against insurers. So if that's a mistake, and that was fairly assumed by this court in light of what happened below, but if that's not right, then it seems problematic to affirm. I guess that's the concern that I have with your position. I disagree with that, your honor, because again, the claim that plaintiffs brought was premised on claims against patients. So it's not up to the district court to say, you know, what if you had brought a different claim, one based on claims against insurers? That simply wasn't what was at issue. And so if this court were to affirm the district court here, it wouldn't be, frankly, opining on whether there is or is not a claim against- But the public rights framework doesn't make sense if there is a claim, a common law against insurers. Well, it made sense for the district court to discuss it because it was- I agree. I'm not disputing what the district court did here in light of what happened, but I'm concerned about what we should do in light of the forfeiture that you're talking about now. I guess I would just add it additionally made sense for the district court to discuss it because the district court was explaining that, you know, it was premised on claims against patients. The IDR system doesn't adjudicate disputes between patients and providers. Therefore, there was no problem with the IDR system under the Seventh Amendment or Article III. So, again, I would just reiterate that it's not stating one way or the other anything about this legal issue that plaintiffs conceded. And, you know, again, plaintiffs haven't provided any reason for this court to excuse their forfeiture and sort of go outside of the traditional rules of party presentation and, you know, address a claim that they never brought in district court. How about the argument raised in the amicus brief of the brain surgeons about whether the IDR process is compulsory or we can avoid a Seventh Amendment problem by reading may to be permissive. So, again, another thing the district court didn't address because it wasn't raised. Right. So, of course, we don't think this court or the district court would have needed to address this question of whether the IDR process is mandatory. As we note in our brief, we do think the best reading of the act is that it is mandatory. One, you know, provision that tells us that is once a party has initiated IDR, it directs, I apologize for the long site, but 300 GG 111 C5BY that the parties shall each submit to the arbitrator an offer for a payment amount. So, clearly, I think the act contemplates that both parties will participate. But again, of course, just to take a step back, we don't think that the court needs to reach that here. And, of course, if I think if the court viewed that as something necessary to address, the best course would be to remand to the district court so it could actually address that issue in the first instance. Of course, as you noted here, it's an odd plaintiffs don't take the position that the amicus takes in this case either. I'll just note one more point. So plaintiffs have, I think, in the sort of vein of forfeiture side, you know, this is just a new argument in support of the same claim. And, therefore, we're not really in the world of forfeiture. And that's not right for the reason that their entire premise of their claim has changed. So this isn't a question of statutory interpretation, again, where, you know, they brought in a new dictionary definition or a new structural argument. They fundamentally changed the nature of their challenge here. So we're not in the world of, you know, we've thought of a new argument in support of the same claim. If the court has no further questions, we're happy to rest on our briefs and ask that the court affirm. Thank you, counsel. We'll hear rebuttal. I almost feel as if I don't need to, but I would like to continue. I'm sorry. Before you get started on that, let me circle back to Judge Park's question about the takings claim. It's now been almost exactly two years, I think, since this complaint was filed. Does Dr. Howler now have a specific, because Judge Lee was trying to get you to say, what is the dollar that was lost here? So your comments suggest that on a day-to-day basis, Dr. Howler and others are losing payments. Has that happened? And is there a new case now? Well, we can't bring that case again now. It's already been brought. I don't know how. Well, if there's a specific taking. Does Dr. Howler have a case now where he says, I treated Mr. Jones. And I'm owed $10,000, and I got $2,000, and that's a taking? Yes. There is, on a daily basis, hemorrhaging money. They can't even afford the overhead. And this is widespread among doctors. But at no point while this was underway, while this district court action was open, did Dr. Howler, did the plaintiffs move to amend to add specific? There's a proposed amended complaint that I'll go look for it, but that says, here are the specific takings. I don't know if that happened with the law firm below. But I do know that they did move to amend. But I don't know what the subject of the amendment was. Okay. Thank you. Going back to specifically addressing what opposing counsel stated, they said the claim was never brought. The claim meaning the claim that the doctors haven't been able to, or the doctors have a common law right under Seventh Amendment to sue the insurers. The claim was brought. The claim is the violation, the Supreme Court cases, ye and its progeny, that the claim is the Seventh Amendment was violated. That there was an Article III violation and a Seventh Amendment violation. That is the claim. The argument is that they are being denied, that the providers are being denied the ability to sue insurers, even though there is an extensive body of common law which gives them just that, and only exact same relief we have here, which is unjust enrichment. There are a plethora of cases out there that provide that. And the court below does not recognize that at all. But she does, and also when I respond to opposing counsel, she says that the Seventh Amendment discussion by the court below gets into the issue of suing patients. It doesn't. Ninety percent of what's in that section, I will again, and I would respectfully direct the courts to Joint Appendix page 56 to 61. So, she discusses Seventh Amendment, and almost every word of it is about why the doctors can't sue the insurers. And that reason she gives is there's no common law. And then- I know you don't want to admit forfeiture, but what would be wrong with remanding, and maybe with instructions for dismissal without prejudice, and you can start over? Because your case has changed. It started out as having to do with claims about patients, and it was premature as to takings as far as I can tell. But if you could start over, then maybe you can state the arguments that you're stating now. How would you feel about that? Well, I would prefer the court simply reverse, but if that were a course of action the court takes, I think that that would be also a reasonable course of action. If we were actually to redraft, if we were talking about actually redrafting, I think that would be quite suitable. But just to continue briefly, I don't know if you want me to do this, but there is a lot of problems with the other side, and with some of what is said, for example, that it's more efficient to just go to these panels. Again, efficiency, and numerous of the cases quoted, cited by everybody, say that efficiency is not and can never be a standard to circumvent Article III and just create these arbitration panels. And again, many of the cases say if even... I don't know about the policy pros and cons of efficiency of the process, but I am interested as I've asked both sides about whether it's compulsory or not, and that's another thing. I believe, as they do, that it is compulsory at least. It's compulsory if one side or the other chooses it. That's what the language states. If one party submits the paperwork, then it is initiated, and that's it. And the other party has the answer. And I would just like to briefly... You stopped me before, so I don't know if you were interested in this, but I would... I would wind up. Okay. I would like to... Okay, sure, thank you. I would like to briefly address that if this paradigm were followed, it would eviscerate Article III completely. And many of the only... Some of these cases say that. That is, if you were to take something... Article I creates a new right, which is then public, but if it somehow keeps borrowing from the common law and sticking it into this new paradigm or into their arbitration panels, saying, well, this is just a little bit. It will help a little bit. If you keep doing that, you end up with no more Article III, because you could do that with a medical malpractice case. What could be more complicated than chemistry and biology? You could do that with building collapses. What could be... And when I say do that, a panel of, quote, experts, where there's negligence by engineers and other people. You could do this with so many cases that you say, well, we need special experts. You don't need special experts to determine whether a fee paid to a doctor is reasonable. You have attorneys. You have experts. And then you have a jury to decide, and that's what is the appropriate form for this case, and the denial of that is a violation of the constitutional right to the Seventh Amendment, right to a jury, and Article III. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.